In re ROYLE ELLIS and EMORY C. MEDLIN, No. 41534—221 S. W. (2d) 139.

Court en Banc, June 13, 1949.

*James E. Sater* for Ellis & Medlin.

*Frank W. Hayes* for Bar Committee.

CONKLING, J.—This disciplinary matter arises from certain facts disclosed in January, 1949 upon the trial of an income tax case in the Federal Court. The Advisory Committee, established by our Rule 5, on March 21, 1949 of its own motion duly notified Royle

Ellis and Emory C. Medlin, practicing members of the Barry County, Missouri bar, hereinafter referred to as "these attorneys", that it proposed to hold an informal hearing upon the ▮▮▮ matter of their professional conduct as disclosed by their own sworn testimony in the United States District Court in the case of United States v. Emory E. Smith. Accordingly, such informal hearing was held at Springfield, Missouri, on April 9, 1949. Mr. Ellis and Mr. Medlin there voluntarily appeared and voluntarily testified.

Thereafter, these attorneys came before us in open court with their counsel, and asked our permission to submit directly to us, upon the transcript of the testimony at the informal hearing before the Advisory Committee and upon their sworn statements to be made to us in open court, the question of their amenability to any disciplinary action. That permission we granted. Accordingly, the filing of any information herein and the issuance of citation were waived. The matter has been submitted to us as above indicated, without briefs, upon the transcript above mentioned and their oral statements here.

The matter arose from these facts. For more than 20 years each of these attorneys has been a practicing lawyer at the bar of this Court and living in Barry County. Mr. Medlin resided at Monett, Missouri, and Mr. Ellis resided at Cassville, Missouri. Each was engaged in the general practice of law. Each has served the county as prosecuting attorney. Mr. Medlin was so acting at the time of these events. Emory C. Medlin and Emory E. Smith are distantly related.

For many years, and until his resignation in January, 1949 Emory E. Smith was judge of the circuit court of the 24th Judicial Circuit of Missouri. That circuit was composed of the counties of Barry, Newton, McDonald and Lawrence. He resigned as such circuit judge during his Federal Court trial upon tax charges in January, 1949. Each of these attorneys practiced extensively in the circuit courts in which Emory E. Smith was the judge.

One Charlotee Nelson died testate in the State of California. She left an estate of considerable value which was there probated. Ancillary administration was had in Barry County, Missouri. She had heirs in Barry County, Missouri, in Iowa and in California. Some of those heirs were distantly related to Emory E. Smith. Prior to her death, and in the year 1941, some of these heirs in Missouri and Iowa employed these attorneys to represent their interests. Copies of the contracts of these attorneys with these clients were filed with us. That employment continued until the Nelson estate matters were closed by a compromise between all the contending heirs. When the estate was finally closed and the compromise agreement was executed these attorneys collected a fee of $9,000.00 from the California assets of the estate.

During the pendency of the estate matter (and before Judge Smith came into it) these attorneys employed California lawyers to represent their clients in California. Some of the Missouri clients (one or more) insisted that a trip be made to California to attempt to there discover further estate assets. Judge Smith then came into the picture. Whether these attorneys offered to take Judge Smith into the employment as an attorney in the estate matter or whether Judge Smith suggested to these attorneys that he be taken in does not clearly appear from anything before us. At that time, however, the proposed California trip was under consideration. In any event, these attorneys and Judge Smith discussed the matter in the office of Judge Smith. Neither attorney felt that he could then make the suggested trip to California. Judge Smith said he could go to California for that purpose as soon as he finished holding his term of court. The question of the propriety of dividing a fee with a circuit judge was then and there raised but Judge Smith assured the attorneys that the statute (Mo. R. S. A. § 2024) did not prohibit his practicing law outside of the State of Missouri. That matter was rather fully discussed at that conference. It was finally agreed that these attorneys would divide equally with Judge Smith the fee received from the California assets of the estate. It was further agreed that Judge Smith would make the California trip to attempt to discover more assets. Before that trip was made the heirs compromised their various contentions and no trip was made. The settlement was in February, 1944. Judge Smith merely had a few conferences with these attorneys about it. He had no responsibility ▮ in the matter and rendered no service.

After receiving the $9,000.00 fee upon the California assets, certain expenses were first deducted. Judge Smith was paid $2812.96 by these attorneys as his division of the fee received. Upon his Federal Court trial Judge Smith testified such payment was a gift from these attorneys to enable him to take a vacation in California. However, these attorneys testified in that trial that the $2812.96 was a division of the above mentioned fee.

The only question before us for ruling is whether these attorneys, upon their own statement of the facts as submitted to us by them, were guilty of professional misconduct.

Our Rule 4 canonizes certain basic principles of professional conduct of the bar and bench, affirmatively noting and prohibiting certain misconducts but stating also that the particular matters therein mentioned are not all-inclusive. In the preamble of the rule it is affirmed that justice cannot be maintained "unless the motives and conduct of the *members of the legal profession* are such as to merit the approval of all just men". (Emphasis ours) Rule 4.02 in terms declares the Bar should strive to have elevated to the Bench "only those willing to forego other employments, whether of a business,

political or other character, which may embarrass their free and fair consideration of questions before them for decision". In Rule 4.03 it is declared that a lawyer "deserves rebuke and denunciation for any device or attempt to gain from a judge special personal consideration or favor". And our Rule 4.34 declares that "No division of fees for legal services is proper, except with *another lawyer, based upon division of service or responsibility*". (Emphasis ours) These rules have the force and effect of judicial decision. State ex rel. Clark v. Shain, 343 Mo. 542, 122 S. W. (2d) 882. In the Canon of Judicial Ethics adopted by the American Bar Association there is stated in even greater detail the underlying tenets of professional conduct given recognition in our Rule 4. Our present Rule 4 and its predecessor, our former Rule 35, were promulgated years ago and the principles and prohibitions therein announced have bound bar and bench alike.

We see no ambiguity in Mo. R. S. A. § 2024 (at that time effective as to the below quoted portion), wherein it is declared that "No judge of any court of record, except judges of the county courts, shall practice or act as counselor or attorney in any court within this state . . . ", etc. The plain meaning of the above quoted part of that statute was that no circuit judge should practice (law) in Missouri, in or out of any court. (But see, Constitution of Missouri, 1945, Art. V, Sec. 24, which became effective March 30, 1945, wherein judges are prohibited to "practice law or do law business" both in and out of Missouri.) Nor do we see any ambiguity in our Rule 4.34 respecting division of fees. Under that rule a lawyer may not divide *any* fee with *any* judge under *any* circumstances. In the division of a fee, a judge before whom a lawyer practices certainly is not "another lawyer", as those words are used in Rule 4.34. Compare State ex rel. Nickerson v. Rose, 351 Mo. 1198, 175 S. W. (2d) 768. A fee may be divided with another *practicing* lawyer (which excludes a judge) only upon the basis of a "division of service and responsibility". Judge Smith rendered no service and assumed and had no responsibility in the estate matter. It seems that at the time it was agreed to divide the fee with Judge Smith the conceded facts were sought to be palliated on the ground that the proposed "services" of Judge Smith were to be performed in California and that only the fee from California assets of the estate was to be divided with Judge Smith. But lawyers and judges know right from wrong.

We will not speculate or elaborate on possible motives. The facts speak for themselves. However, the instant circumstances warrant an announcement of the applicable rule in plain and unambiguous words. Despite any protestation of the absence of improper motive, under no circumstances may any practicing lawyer divide any fee with or make any gift to any judge before whom he practices law. And under no circumstances may any judge accept any

division of any fee (of domestic or foreign ██ origin) or any gift from any lawyer whose causes he is or may be required to deter-- mine. The courts should not have to announce that rule. It should be an unwritten but well understood and always adhered to part of every lawyer's code of conduct. It should be one of the basic dogmas by which he lives. Violation of that rule tends to pervert and obstruct justice, is most reprehensible, deserves the condemnation of the profession and the contempt of the layman. The reason for that rule is too obvious to require supporting authority. Any knowledge of human frailties or of the motives which inspire the actions of men furnishes sufficient reason for the rule. Were the rule otherwise written public confidence in the profession and in the impartial administration of justice would quickly disappear. Distrust, apprehension and fear of both the profession and the judicial process would quickly replace public confidence. If the rule were otherwise the legal profession would not deserve the respect of the public.

But in proceedings of this character we must ever be mindful that the purpose is not to punish any attorney involved, but the preservation of the courts from the ministration of persons unfit to serve therein as attorneys. Ex parte Wall, 107 U. S. 265, 2 S. Ct. 569, 27 L. Ed. 552, In re Conrad, 340 Mo. 582, 105 S. W. (2d) 1, In the Matter of Connor, 357 Mo. 270, 207 S. W. (2d) 492. We must further consider the fact that on the part of these attorneys no other or further instances of professional misconduct are complained of or disclosed. Other than as appears from the above facts the testimony before us discloses they have had and maintained honorable careers at the bar during all the years of their practice.

In this connection we further consider their co-operation with the Advisory Committee, the candor of their testimony and their desire to submit themselves to whatever disciplinary action we deem proper thus making unnecessary further hearings and additional costs. It is further our considered opinion that there is no likelihood of any future misconduct upon the part of these attorneys.

Under all the circumstances before us here we believe that neither disbarment nor suspension of their licenses to practice law is merited.

But in addition to the reprimand of Royle Ellis and Emory C. Medlin above noted, it is ordered that the said Royle Ellis and Emory C. Medlin pay all costs incurred both before the Advisory Committee and in this Court. It is so ordered. All concur.