**William J. McFARLAND, Administrator, c. t.a., d.b.n. of the Estate of William C. McLaughlin, Deceased (Plaintiff), Respondent,**

**v.**

**Lovell W. GEORGE (Defendant), Appellant.**

**No. 29929.**

St. Louis Court of Appeals.

Missouri.

Oct. 7, 1958.

Coburn & Croft, Richmond C. Coburn, Frank E. Booker, St. Louis, for appellant.

Rader, Love & Falzone, Clayton, Lawrence Presley, St. Louis, for respondent.

RUDDY, Presiding Judge.

William C. McLaughlin, an attorney, instituted this action against Lovell W. George, an attorney, to recover a portion of a fee allowed defendant by the Probate Court of the City of St. Louis. Joined with Lovell W. George as a defendant was Willis V. Hauser as the executor and trustee of the Estate of Laura E. Whelpley, deceased, and as guardian of the person and estate of Ouida M. Hauser, non compos mentis. William C. McLaughlin died after the action was begun and his wife was substituted in his stead as executrix of his estate. Thereafter, William J. McFarland as administrator, c. t. a., d. b. n., was ordered substituted as the plaintiff. In the trial court the case was tried as an equity action and resulted in a judgment in favor of plaintiff and against defendant George for $6,666.66 and in favor of defendant Willis V. Hauser in his capacity as executor and trustee of the Estate of Laura E. Whelpley, deceased, and as guardian of the person and estate of Ouida M. Hauser, non compos mentis. Defendant George appealed.

Plaintiff's amended petition on which the case was tried was in three counts. It was alleged in Count I that McLaughlin and George were duly licensed and practicing attorneys in Clayton, Missouri, and that McLaughlin had represented Ouida M. Hauser both before and after her adjudication as an incompetent person. It was further alleged that Laura E. Whelpley was an aunt of Ouida M. Hauser; that shortly after the death of Laura E. Whelpley the said Ouida M. Hauser "telephoned plaintiff (William C. McLaughlin) and earnestly and repeatedly requested and urged plaintiff to undertake the representation of her in her claim as next of kin and heir at law in a suit to contest the

will of said Laura E. Whelpley; that plaintiff informed said Ouida M. Hauser that he was then engaged in a political campaign as a candidate for the nomination for the office of Prosecuting Attorney of St. Louis County and that by reason thereof he could not then give her cause of action the time and attention it required; that if Mrs. Hauser so desired he would send an attorney to see her with a view of handling the matter until plaintiff's political and official duties permitted him to devote such time and attention as said cause might require."

It was further alleged that McLaughlin and George entered into an agreement to represent Ouida M. Hauser until such time as McLaughlin's political undertakings and official duties as an Assistant Prosecuting Attorney of St. Louis County would permit him to give his attention to the matter and that this agreement was a joint enterprise, the profits of which McLaughlin and George were to share equally.

It was further alleged in said petition that George contacted Ouida M. Hauser and reported to McLaughlin "that she could not enter into a contract for legal representation by reason of her adjudication" as an incompetent and that thereupon McLaughlin informed George that he should petition the Probate Court of the City of St. Louis to be appointed as special counsel or guardian ad litem and if George felt there was any merit in the claim of Ouida M. Hauser that he should continue the prosecution of said claim.

It was further alleged in said petition that George secured the appointment as guardian ad litem and that thereafter on many occasions George represented to McLaughlin "that the said Mrs. Hauser's claim against the said estate of Laura E. Whelpley, deceased, was of questionable merit and represented his present belief to be to receive only a nominal settlement of the said claim, * * *."

It was further alleged that George represented to McLaughlin the said Ouida M.

Hauser by her conduct and actions had ruined whatever claim she had. Said petition further alleged that these representations made by George were false and fraudulent and were made with the purpose, intent and design of deceiving and defrauding McLaughlin and of inducing him to take no action and make no inquiries in connection with the claim of said Ouida M. Hauser.

It was further alleged that McLaughlin believed and relied on these representations and "permitted defendant George to handle the claim as he saw fit without participation therein" by McLaughlin. It was alleged that in truth and in fact the claim of said Ouida M. Hauser was meritorious and valuable and that it had not been ruined by her conduct or actions and that these matters were well known to said George.

It was further alleged that in the latter part of June or early part of July 1955 George effected and consummated a settlement of the will contest wherein the Ouida M. Hauser Estate was to receive from the Estate of Laura E. Whelpley, deceased, the sum of $100,000, which said settlement resulted in a $20,000 fee being awarded by the Probate Court to George.

It was further alleged that the order wherein George was allowed the sum of $20,000 was made by the Probate Court without the knowledge that McLauglin had been an attorney in the case, which fact, it was alleged, was concealed from the said Probate Court and opposing counsel in said will contest.

Count I concluded with a prayer asking that "the Court find and declare by its decree that there was and is a special partnership or joint venture" by and between McLaughlin and George and that George be ordered and directed to account to the plaintiff for all fees received and that the court order, adjudge and decree that plaintiff is entitled to one-half of the said $20,000 fee by virtue of an equitable assignment.

Count III of the petition prayed that George be found to be a constructive "trustee" of the fee awarded by the Probate Court to him. There is no need to recite the allegations of Count II because it was stipulated by and between the parties that the case would be tried on Counts I and III. They further stipulated that the judgment upon said Counts might be considered appealable.

The case was tried as an equitable action and it will be reviewed as such by this court. In reviewing an action in equity this court will make its own findings and reach its own conclusions and where proper will defer to the findings of the trial court. Poole v. Campbell, Mo., 289 S.W.2d 25, loc. cit. 32.

In one of the points relied on by defendant he contends the trial court erred in implying a promise by defendant George to share the fee allowed him with McLaughlin because an express agreement to that effect would have been void, pointing out that the courts will never imply a promise to share the fee where an express promise to do so would be void. It is the contention of George that the evidence shows McLaughlin merely referred Ouida M. Hauser to George and that McLaughlin is endeavoring to recover a finder's or procurer's fee without a division of service or responsibility in violation of Supreme Court Rule 4.34, 42 V.A.M.S. This point, relied on by defendant, requires a full statement of the evidence.

Mrs. Olive McLaughlin, widow of William C. McLaughlin, testified for plaintiff. Her testimony showed that her deceased husband had been Assistant Prosecuting Attorney in St. Louis County until January 1, 1955, and had opened a private law office at 8021 Forsyth, Clayton, Missouri, about December 15, 1954. She was acquainted with Ouida M. Hauser, having met her the first time in 1951. She had spoken to Ouida M. Hauser many times over the phone. These telephone conversations were the result of calls by Mrs. Haus-

er. The witness recalled no telephone conversations with Mrs. Hauser at Mr. McLaughlin's office. The first time she met defendant George was in June 1954, during her husband's political campaign when he was a candidate for Prosecuting Attorney in St. Louis County. On that occasion, after introduction of his wife to George, her husband said to her, "Brother George is nurse-maiding Old Lady Hauser in that big will contest I told you about." Then he (McLaughlin) said to George, "Well, I wish you luck." George then said, "Well, I'm sure we're going to have it. I think I can do some good for both of us."

Again, on August 5, 1954, the witness was present when a conversation took place between her husband and George. After exchanging amenities and some talk about the past political campaign, her husband said to George, "We're going to take a few days off, going on a little vacation." The witness then testified to the following:

"Mr. George asked us where we were going and we told him we were going up East and so forth, and Mac said, 'When I get back, I'm going to have to think about getting into law business,' and so we were walking on out and he said, 'By the way, how's the case coming along with old lady Hauser?' and Mr. George didn't say anything and Mac turned around towards us and he said, 'You know that old gal I referred to you with that will contest,' and Mr. George said, 'Well, oh, yes,' he said, 'Mac I looked at it' or 'I have investigated it' or something to that effect, and he didn't think it amounted to much; and Mac said at that time, 'Have you handled it like we discussed?' And Mr. George said, 'Well, I just don't think it amounts to much,' And Mac said, 'Well, we are going away for a few days and when we get back I'll see what help I can give you on it,' he said, 'I'll do all I can' * * *."

On cross examination this witness testified that she did not know that a will contest

had been filed. She had no personal telephone conversations with Mrs. Hauser except to take a message for Mr. McLaughlin. The messages on these occasions concerned fancied complaints that Mrs. Hauser had about alleged abuse of patients at the City Hospital and with alleged exhuming of bodies in cemeteries. In none of these conversations was the name of defendant George mentioned. She knew of no handling of matters by her husband for Ouida M. Hauser that could be described as legal work except some matter with a contractor who had built a house for Mrs. Hauser.

Murtha J. Hackett, attorney and a witness in behalf of plaintiff, knew McLaughlin for some years and had known George since the commencement of the will contest. Hackett represented one of the legatees under the contested will. On the first setting of the taking of depositions in the will contest the witness asked George, "Where was Mr. McLaughlin" and George replied, "I'm taking care of this case now for him." The witness admitted on cross-examination that he had not seen McLaughlin after the taking of the first deposition. He was then asked by George if he had called McLaughlin on the telephone and he replied that he had not, but that prior to the taking of the deposition he had a conversation with McLaughlin in front of the Prosecuting Attorney's office. Thereupon he started to relate the conversation when an objection was made by the defendant, which objection was subsequently withdrawn. Thereafter, the witness volunteered the following statement: "I am trying to answer the question that you asked me. I met Mr. McLaughlin out in the court * * * out in the corridor of this same floor, and he told me at that time that he was a candidate and was going to run for Prosecuting Attorney. And I said, 'Aren't you representing Mrs. Hauser any more?' He says, 'Oh, yes, I've turned that matter over and I'm associating with Mr. Lovell George.'" The witness stated this conversation took

place in February or March. Obviously, he must have meant in the year 1954 for it was at the time McLaughlin contemplated running for the office of Prosecuting Attorney.

After some further questions by George, the witness volunteered the following statement: "No, let me finish the answer. He told me that he had given you other business in which you and he were associated together in many cases, and he said that 'Mr. George and I will continue in this matter of this Hauser matter.'" Hackett admitted that he had no dealings directly with McLaughlin in connection with the Whelpley will contest and McLaughlin did not attend any of the conferences between the representatives of the defendant in this contest and admitted that he had several conferences with George regarding settlement of the will contest.

Another witness for plaintiff was Herbert Lasky, an attorney who had been in the Prosecuting Attorney's office as an assistent with McLaughlin. After his retirement from the Prosecuting Attorney's office he had office space in the same law suite with McLaughlin. The witness and McLaughlin were associated professionally in six or eight cases. He received telephone calls for McLaughlin from Ouida M. Hauser when he was in the Prosecuting Attorney's office and when associated together in the same law suite. On occasions when answering these phone calls he would talk to Ouida M. Hauser. The conversations concerned her delusions about the City Hospital and other matters. He knew the defendant approximately three years. In January 1955, the witness and McLaughlin visited the office of George and McLaughlin asked George "What's new?" or "What's happening in the Hauser matter?" George replied, "Nothing new" or "Nothing very much." The next conversation between McLaughlin and George, heard by this witness, occurred in the latter part of February or early part of March 1955, and the same exchange of words took place between McLaughlin and

George. A third conversation between McLaughlin and George, heard by the witness, took place in the spring or early summer of 1955. In this conversation McLaughlin again inquired about the Hauser case, and George again said there was "Nothing new, nothing different." However, on this occasion McLaughlin added, "Well, Lovell, * * * whatever you say, it's in your hands, however you decide." This witness testified that Mrs. Hauser had visited the office of McLaughlin at 8021 Forsyth on two occasions. He admitted on cross-examination that in his deposition when asked what McLaughlin thought of the will contest he answered, "Well, he thought it was a good lawsuit."

The last witness who testified in plaintiff's case in chief was Theresa L. Clements. She was a court reporter who shared the suite of offices at 8021 Forsyth with McLaughlin during his lifetime. She saw Ouida M. Hauser in the office on one occasion in the company of another woman and a man. On this occasion she said an angry discussion took place and that McLaughlin "showed them out." In describing this discussion the witness testified, " * * * there was quite a loud discussion and Mr. McLaughlin was obviously angry with them over this will or whatever they were discussing." This incident took place the early part of 1955.

Chester A. Love, one of the attorneys of record for the plaintiff, testified in plaintiff's rebuttal. This witness and George occupied offices together at 8015 Forsyth until the early part of 1954. While there he answered the phone on occasions. When the call was for McLaughlin he questioned George about this and George replied, "Oh, yes, Mac wanted an office away from the court house and he is listed at this number and at this address." However, the witness had never seen McLaughlin in that suite of offices at any time.

We have examined the record carefully and the aforesaid constitutes all the material evidence adduced by plaintiff. We will now recite those parts of defendant's evidence

we think pertinent to a review of the points raised on this appeal.

The Hon. Thomas J. Boland, Judge of the Probate Court of the City of St. Louis, was produced as a witness by defendant. He identified various exhibits which were received in evidence. These exhibits showed the following:

That George petitioned the Probate Court of the City of St. Louis on July 28, 1954, for appointment "as personal attorney, and (or) guardian ad litem" for Ouida M. Hauser.

That he was appointed by the Probate Court of the City of St. Louis on August 17, 1954, as guardian ad litem "to make an investigation concerning the interests, if any, of the said Ouida M. Hauser" in the Estate of Laura E. Whelpley, deceased.

That on December 10, 1954, George as guardian ad litem reported on his investigation and asked authority to institute a will contest.

That on the same day an order was entered authorizing George as guardian ad litem to institute suit contesting the will of Laura E. Whelpley.

That on June 27, 1955, George filed his report "in regard to will contest proceedings" and "his recommendation for approval of agreement and settlement thereof."

The report listed the "factors adverse to the ward" and those favorable. The report showed that the first offer of settlement was made on May 6, 1955, for $60,000; the second offer was made on May 30, 1955, for $90,000 and the third and final offer was made on June 4, 1955, for $100,000 which he recommended and asked this sum be approved for settlement.

That on June 27, 1955, the court approved the compromise of the will contest as recommended by George.

That on July 5, 1955, George filed an application for allowance of an attorney's fee and the court on July 14, 1955, ordered "that said guardian ad litem be and he is hereby allowed attorney's fees in full for his services rendered and to be rendered, in the sum of Twenty Thousand Dollars * * *."

It was shown in the testimony by Judge Boland that about one month before George filed his petition requesting that he be appointed guardian ad litem a meeting was held in the office of Judge Boland to discuss the possibility of bringing the will contest. Judge Boland knew that Ouida M. Hauser had been referred to George by McLaughlin, having been told this by George. However, prior to the settlement of the will contest Judge Boland had no communication of any nature with McLaughlin about any matter concerning the will contest or Ouida M. Hauser. After the allowance was made McLaughlin came to see Judge Boland. McLaughlin also filed a motion in the Probate Court in the City of St. Louis to set aside the order allowing the fee to George and shortly after filing same McLaughlin dismissed the motion.

Lloyd B. Magruder, Jr., testified for defendant. On June 12, 1954, he visited McLaughlin in the office of the Prosecuting Attorney. While there a telephone conversation took place between McLaughlin and another person he referred to as "Sister Hauser." He told her he was too busy to handle her case and that he would like to recommend a lawyer who specializes in handling estate cases. He then told the witness if he had the time he would look into her case. In September 1954, the witness again visited McLaughlin at the office of the Prosecuting Attorney. On this occasion McLaughlin talked over the phone with Ouida M. Hauser and told her he was not her attorney and that George was her attorney. He told her "He didn't have the time and didn't want to be bothered with her phone calls." The witness had visited McLaughlin's office five or six times in 1954.

Frank E. Morris, an attorney, testified for defendant. He represented Ouida M. Hauser prior to her second adjudication and thereafter he represented her guardian ad litem, Willis V. Hauser. He also represented Willis V. Hauser as executor of the Estate of Laura E. Whelpley, Deceased, in the will contest. He regarded the will contest as very much a contested suit. He had no contact with McLaughlin about the will contest until after it was settled. There had been an offer to pay Ouida M. Hauser some yearly income in an effort to avoid a will contest and George knew about this. The witness knew from some source that the case had been referred to George by McLaughlin.

Introduced by the defendant and received in evidence was a letter from McLaughlin to George dated July 22, 1955, in which McLaughlin made a formal demand upon George for the payment of $10,000 "being one-half of the fee allowed" by the Probate Court. The paragraph pertinent to a consideration of the issues raised is as follows:

"Under ordinary circumstances I would feel that *the procuring and referring lawyer* would be entitled to a third only of the fee realized in this matter, but the false and fraudulent statements you repeatedly made to me in an effort to deceive and defraud me entitles me, in my opinion, to demand a full one-half division." (Emphasis supplied.)

Other witnesses testified in behalf of the defendant whose testimony we have omitted because it has no material bearing on the issues raised. The only remaining bit of material evidence not heretofore related was the testimony of Mrs. W. V. Hauser who testified Laura E. Whelpley died May 27, 1954.

The court filed a Memorandum Opinion in which it set out its findings of fact and conclusions of law. The court found "that there was and is a special partnership or joint venture existing by and between plaintiff's decedent and defendant George

as alleged in * * * Plaintiff's Petition" and "that the plaintiff is entitled to one-third of the net amount collected by said defendant George."

The principal point relied on by defendant George, as we view his points, is that the trial court erred in implying a promise by George to share the fee allowed him because an express agreement to that effect would have been void. It is the contention of defendant George that the courts will never imply a promise where an express promise of the same thing would be void. Defendant relies on Supreme Court Rule 4.34, 42 V.A.M.S. which provides that:

"No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility."

Defendant asserts that McLaughlin performed no services and assumed no responsibility. It is conceded that there was no express contract between George and McLaughlin covering the division of fees.

■ Plaintiff asserts that the legal question presented is whether two attorneys can lawfully enter into a special partnership agreement for the representation of an incompetent client and then after that is done, whether the partners may divide the fee allowed. The answer to this assertion of plaintiff is that they may enter into such agreement provided there is a sharing of services or responsibility and the agreement provides that the division of the fees be based upon a division of the services rendered or responsibility assumed.

■ Plaintiff characterizes the association between George and McLaughlin as a "joint adventure" and a "special partnership." We have some doubt that the legal concept of joint adventure can be applied to an agreement whereby lawyers associate professionally to represent a client, although in some authorities it has been referred to as a joint adventure. A joint

adventure ordinarily contemplates an enterprise for commercial profit. 48 C.J.S. Joint Adventures § 1, p. 802. However, it makes little difference by what name the association of the two lawyers is called, the agreement to associate must comply with Supreme Court Rule 4.34, 42 V.A.M.S. To hold otherwise would be to make the rule nugatory. It should be understood that we are not dealing in this case with a general partnership and what we have to say concerns an agreement whereby a special partnership is arranged to handle a single case.

The trial court in its Memorandum Opinion said: "The lawyer jointly employed is entitled to share equally with the other lawyers so employed with him in the fee obtained from the client." The trial court cited Henry v. Bassett, 75 Mo. 89, in support of its statement. This case was decided in 1881, long before the adoption by the American Bar Association of its Canons of Ethics and long before the Missouri Supreme Court adopted Rule 4.34 in 1937, which rule is the same as Canon 34 of the American Bar Association. There can be no doubt but what Supreme Court Rule 4.34 has the force and effect of law. In re Ellis, 359 Mo. 231, 221 S.W.2d 139, loc.cit. 140. In the case of Henry v. Bassett, supra, the court held that a mere failure of one of the special partners under the contract of employment to render service would not amount to an abandonment and, therefore, in the absence of an agreement to the contrary each special partner was entitled to share equally in the compensation. The court did point out that if there was a refusal to render service, such refusal might bar the right to share in the compensation. However, as pointed out by defendant, this case was decided in an era when it was the practice of the bar of this state and the country to charge and pay what has been variously described as a finder's fee, forwarding fee, or referral fee. Obviously the trial court must have relied on the existence of such a practice when it allowed plaintiff one-third of the fee obtained by defendant George, for it

seems that the traditional fee paid to a finder or one who referred a case was one-third of the compensation received by the forwardee. Knowledge of such a practice can be the only basis for the trial court's judgment, because the record is devoid of testimony of an agreement to pay any stipulated sum.

■ It was the intention of the Supreme Court in adopting Rule 4.34 to prohibit the practice that had been followed prior to the adoption of the Rule. To merely recommend another lawyer or to refer a case to another lawyer and to do nothing further in the handling of the case cannot be construed as performing service or discharging responsibility in the case. The service and responsibility referred to in the rule, before a lawyer is entitled to a division of the fees, must relate to an actual participation in or handling of the case. As we said before the rule would be meaningless if this were not so.

■ In approaching a consideration of the scope and meaning of Supreme Court Rule 4.34 we must be mindful of Supreme Court Rule 4.12 wherein is given some rules of guidance in fixing fees. We construe this rule to have application to any case in which lawyers' fees are involved. One of the guideposts found in this rule points out that in a consideration of lawyers' fees "it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade." It is the purpose of the Canons of Ethics, adopted and made rules of court, to avoid the evils that attend many commercial transactions.

■■ Admission to the practice of law is something more than admission to an association of businessmen or tradesmen. It is membership in an ancient and honorable profession that has for its goal the furtherance of the administration of justice and the attorney is an instrument for the achievement of this noble purpose. An attorney is an officer of the courts and as

such is intimately connected with every operation of the courts. Therefore, members of the public who seek the services of an attorney cannot be treated by him as mere merchandise or articles of trade in the market place. Such a practice would be inconsistent with Supreme Court Rule 4.

Supreme Court Rule 4.34 makes it mandatory that there be a division of service or responsibility before a division of fees between lawyers is permitted. The rule clearly states there shall be "no division of fees" unless there is a division of service or responsibility and then the division of fees must be based on the amount of service or responsibility each contributed. In Clark v. Robinson, 252 App.Div. 857, 299 N.Y.S. 474, the court pointed out that plaintiff, an attorney, admitted that his professional connection with the clients terminated after he recommended them to the defendants and that thereafter he expected to render no legal services to them and in fact rendered none and expected to share only in the fees and not in defendants' responsibilities as attorneys. The court held that under such circumstances plaintiff was not entitled to a division of the fees. In the case of Silver v. Paulson, 285 App.Div. 1059, 139 N.Y.S.2d 456, the court held that where plaintiff's complaint, wherein he sought a division of legal fees, failed to allege that he, an attorney, agreed to share in services or that he assumed any responsibility in connection with the case, it would be dismissed. In our own state the Supreme Court has said a fee may be divided with another practicing lawyer *only* upon the basis of a "division of service and responsibility." In re Ellis, supra [359 Mo. 231, 221 S.W.2d 141]. Henry S. Drinker, author of a book on legal ethics, in a panel discussion reported in 7 University of Florida Law Review, pp. 433, 434, said inter alia: "It makes the law too much of a business if you are practicing the way you would as a broker. The lawyer is not supposed to get paid for anything but the legal services that he renders,

and selling a man a client is not a legal service." We think the term "legal services" mentioned in Supreme Court Rule 4.34 did not contemplate the mere referral of a client to another lawyer without sharing in the services or assuming some of the responsibility of the case. The service and responsibility called for under the rule must be to the client. Supreme Court Rule 4.35 states that "A lawyer's relation to his client should be personal."

In construing Supreme Court Rule 4.34 little difficulty is found in dealing with the word service, but the word "responsibility" on first blush seems to offer more difficulty. The primary meaning of "responsibility" as found in the dictionaries is the state of being answerable for an obligation. Niagara Fire Extinguisher Co. v. Hibbard, 7 Cir., 179 F. 844, 848. The term "responsibility" includes judgment, skill, ability and capacity. Ohio Power Co. v. N. L. R. B., 6 Cir., 176 F.2d 385, 387. Legal responsibility is the state of one who is bound or obliged in law and justice *to do something*. Behnke v. New Jersey Highway Authority, 13 N.J. 14, 97 A.2d 647, 654. In Crockett v. Village of Barre, 66 Vt. 269, 29 A. 147, the court said: "One's duty is what one is bound or under obligation to do. One's responsibility is its liability, obligation, bounden duty." The word "responsibility" as used in the rule means the doing of something. Any other meaning would render the rule meaningless. We agree with the statement of Henry S. Drinker, in his work, Legal Ethics, when discussing the rule at p. 186, where he said: "The service and responsibility must, to be effective, relate to the handling of the case." If the division of fees is to be placed on the basis of how much service or responsibility each contributed in connection with the legal services rendered in the case, obviously, the responsibility called for under the rule must be related to the legal services rendered in the actual handling of the case.

Merely recommending another lawyer to a client or referring a client to another

lawyer is not the performance of a legal service or the discharge of responsibility. Such a practice if approved would make the lawyer a mere broker and would destroy the professional standing of lawyers as such and in time would tear down the wall that separates them from non-professional groups. Such a practice would make them tradesmen in the market place. As we pointed out herein it was the practice of the bar prior to the adoption of Rule 4.34 to charge and pay a finder's or referral fee. However, such a practice or custom is unavailing as a justification for its continuance in the face of the plain intent of the rule. It was the purpose of Rule 4.34 to condemn this practice. No other meaning can be reached.

In the instant case it becomes more important that the rule be applied as we have indicated, than in other types of cases. In this case the Probate Court allowed George a fee without knowledge that a part of the fee was to be paid McLaughlin. The Probate Court allowed George what it thought was a reasonable fee for *his* services. If George has to divide his fee he will not be paid a reasonable fee for his services. As pointed out in Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243, the evils to which such a practice might lead are manifest. It would, in effect, take from the court the judicial function and vest it in an unrecognized stranger. The court also pointed out that there would be a temptation to both attorneys to seek so to increase the allowance as to secure a generous provision for both. Motive for excessive allowance could hardly be more direct. Supreme Court Rule 4.12 directs that "lawyers should avoid charges which overestimate their advice and services."

The construction we have given to Supreme Court Rule 4.34 is in accord with the opinions of the Committee on Professional Ethics and Grievances of the American Bar Association on Canon 34 of the Canons of Professional Ethics formulated and recommended by the American Bar Association. Canon 34 is identical in content with Supreme Court Rule 4.34 and we have received much help from the aforesaid opinions in our examination of Rule 4.34.

We will now discuss the facts in this case as outlined heretofore and apply Supreme Court Rule 4.34 as we have construed it to the facts as we find them. As we said before, it is conceded there was no express contract between George and McLaughlin. It is also conceded that McLaughlin performed no services. The only inquiry that remains is whether it can be implied from the evidence that McLaughlin assumed some responsibility in the handling of the will contest.

Plaintiff contends that McLaughlin continued to have constant contact with Ouida M. Hauser. The only contact shown by the evidence, after the referral of the case to George, was through the medium of telephone conversations and a few personal contacts. None of the witnesses testified to telephone conversations that concerned the will contest. All the telephone messages concerned complaints of the conditions at the City Hospital and other complaints which were mere delusions of the incompetent ward. Mrs. McLaughlin knew of no legal work her husband had for Mrs. Hauser other than a matter unrelated to the will contest. Lasky testified to two visits by Mrs. Hauser to the office and the only other personal contact McLaughlin had with Ouida M. Hauser during the pendency of the will contest was told by Theresa L. Clements. On that occasion she said McLaughlin "showed them out." Nothing in the testimony of these witnesses shows the assumption and discharge of responsibility in the handling of the will contest. Further, the testimony of Theresa L. Clements shows she did not know what they were discussing.

Plaintiff points to the testimony of Murtha Hackett wherein he said that George was taking care of the case for McLaughlin. This statement is no proof of responsibility assumed or discharged by McLaughlin. On the contrary it is more consistent with a mere referral of the case to George by

McLaughlin. The other testimony of this witness concerning conversations he had with McLaughlin was clearly hearsay evidence. No objection was made to this testimony and consequently it must be considered and given its natural probative effect as if it were in law admissible. Thorn v. Cross, Mo.App., 201 S.W.2d 492. However, we regard this evidence as having no substantial force. First of all the witness stated that the conversation took place in February or March of 1954. The testator, whose will was the subject of the will contest, died May 27, 1954. Secondly, this testimony shows no actual responsibility discharged in the handling of the case. On the contrary the conversation shows that McLaughlin was going to run for Prosecuting Attorney and for that reason he turned the matter over to George. Hackett admitted he had no dealings with McLaughlin in connection with the will contest and that all of his dealings were with George.

Plaintiff contends that McLaughlin gave George specific instructions as to the handling of the case and that he advised George that he would be available after the primary campaign to help work on the case. The fact is, as the evidence shows, he did not work on the case after the primary or after he returned from his vacation. The only possible bit of evidence that comes close to showing the exercise of responsibility in the handling of the case by McLaughlin was the statement testified to by Mrs. McLaughlin when she said her husband said to George "have you handled it (the case) like we discussed?" This statement is vague in meaning and to make it the basis of a finding of the exercise of responsibility on the part of McLaughlin would be unsound. What was discussed does not appear in the evidence. As pointed out by defendant George, McLaughlin in his demand letter of July 22, 1955, made no mention of having outlined a course of procedure to be followed in handling the will contest. It should be noted that this letter made no claim that McLaughlin performed services or assumed any responsibility in the will contest.

Finally, plaintiff points to the three separate conversations between McLaughlin and George testified to by Lasky. These conversations do not show that McLaughlin assumed any responsibility in the handling of the case. Here again the contrary is shown, for McLaughlin told George the case "is in your hands."

Plaintiff seeks to come within the provisions of Supreme Court Rule 4.33 governing partnerships. It is sufficient to say there is no evidence of a true partnership of the kind contemplated by Rule 4.33. As we said before, we are not dealing with a general partnership arrangement. Plaintiff is only contending that a special partnership existed for the handling of the will contest.

Plaintiff also contends that McLaughlin "was prevented from performing more work (or any work) by the actions of his partner." In this connection plaintiff asserts that the evidence shows an intentional misleading of McLaughlin by George as to the conduct, activity and worth of the Hauser case. It should also be pointed out in connection with this contention of plaintiff that the trial court found that on occasions plaintiff "was led to believe by defendant's statements that the litigation was either inactive or was not of much value even at a time when the defendant had worked out or was in the process of working out a one hundred thousand dollar settlement of the litigation." The court also found that "the plaintiff was improperly led by defendant to believe that his services were not required * * *." The court further found "That the conduct of the defendant lawyer with the plaintiff lawyer was not characterized by the candor and fairness called for by Supreme Court Rule 4.22."

We find no evidence to support the finding of the court that McLaughlin was led by defendant to believe that his services were not required. There is no evidence that McLaughlin offered to assume any

of the services or responsibility of the case. It is true he said he would help George when he returned from his vacation, but there is no evidence that he made any such offer when he returned. The evidence shows that McLaughlin did make inquiries about the case and that George said there was "nothing new" or "nothing very much." However, there is nothing to show that these statements made by George were not truthful. The only evidence in the case which shows the first promise of success in connection with the will contest is not contained in plaintiff's evidence, but is in the defendant's case. This evidence is found in defendant's exhibit which was the report of George to the Probate Court wherein he recommended the settlement. In this report it is shown that the first offer of settlement was made May 6, 1955, for $60,000. All the conversations McLaughlin had with George, with the exception of one, concerning the state of the case, took place prior to May 6, 1955. In connection with the conversation between McLaughlin and George heard by witness Lasky, which he said took place in the spring or early summer of 1955, we are unable to say that this conversation took place before May 6, 1955, when the first offer of settlement was made. In connection with the testimony of this witness it appears that McLaughlin was not misled as to the value of the lawsuit, for he said: "he (McLaughlin) thought it was a good lawsuit." Also, Mrs. McLaughlin's testimony shows that her husband knew it was a "big will contest." In this connection can McLaughlin be heard to say he would have gotten into the lawsuit if the prospect of recovery was excellent, but would be justified in not participating in the will contest if the prospect of success was doubtful? We think not. We find a complete lack of evidence to support the findings of the court in the respects just discussed.

Finding as we do that no joint adventure or special partnership between McLaughlin and George can be implied because McLaughlin rendered no service and assumed no responsibility, it is obvious that George was not obliged to treat McLaughlin with candor in the sense of revealing to him the value and the progress of the will contest.

We have said that plaintiff's evidence fails to show that McLaughlin performed any services or assumed or discharged any responsibility in the handling of the will contest. We find further support for this finding in the evidence adduced by the defendant. Lloyd B. Magruder, Jr., testified he heard McLaughlin tell Ouida M. Hauser that he was not her attorney and that George was her attorney. He also heard him tell her that he was too busy to handle her case and that he would recommend another lawyer. Confirming this testimony is the statement of McLaughlin in his letter of July 22, 1955, to George, wherein he characterized himself as "the procuring and referring lawyer." In this letter McLaughlin made no mention of performing services or assuming responsibility in the handling of the case.

■ We find that McLaughlin performed no services and assumed no responsibility in the handling of the will contest within the meaning of Supreme Court Rule 4.34. We further find that McLaughlin merely referred the case to George. Therefore, McLaughlin was not entitled to a division of the fee received by George and this is so regardless of the nature of the action brought to recover a division of the fee.

The judgment for the plaintiff and against defendant George should be reversed. It is so ordered.

ANDERSON, J., and JOHN C. CASEY, Special Judge, concur.